1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW P. McDEVITT, | Case No. SACV 13-1532 JC |
| Plaintiff, | MEMORANDUM OPINION AND ORDER OF REMAND |
| v. | [DOCKET NOS.  14, 15, 16] |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, erroneously sued as "Carolyn W. Colver," | |
| Defendant. | |

## I.    SUMMARY

On September 30, 2013, plaintiff Matthew P. McDevitt ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion")[1] and ("Defendant's Motion").  The

///

---

[1]Plaintiff filed his original Motion for Summary Judgment on April 3, 2014, but filed a first amended motion for summary judgment on April 4, 2014.  (Docket Nos. 14, 15).

1

1  Court has taken such motions under submission without oral argument.  See Fed.

2  R. Civ. P. 78; L.R. 7-15; October 3, 2013 Case Management Order ¶ 5.

3  Based on the record as a whole and the applicable law, the decision of the

4  Commissioner is REVERSED AND REMANDED for further proceedings

5  consistent with this Memorandum Opinion and Order of Remand.

6  **II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

7  **DECISION**

8  On August 11, 2009, plaintiff filed an application for Disability Insurance

9  Benefits.  (Administrative Record ("AR") 173).  Plaintiff asserted that he became

10  disabled on January 9, 2009, due to diabetes, prostate cancer, arthritis, posterial

11  [sic] artery disease, post traumatic stress disorder ("PTSD"), depression,

12  neuropathy of the feet, stress/anxiety/panic attacks, hearing loss, fatigue, prostate

13  removal, urinary incontinence, cancer, and heart issues.  (AR 204).  The

14  Administrative Law Judge ("ALJ") examined the medical record and heard

15  testimony from plaintiff (who was represented by counsel), plaintiff's wife, and a

16  vocational expert on April 13, 2011.  (AR 590-638).  On May 20, 2011, the ALJ

17  determined that plaintiff was not disabled through the date of the decision.  (AR

18  60-69).

19  On January 10, 2012, the Appeals Council granted review, vacated the

20  ALJ's May 20, 2011 decision, and remanded the matter for further administrative

21  proceedings.  (AR 18, 75-77).

22  On March 14, 2012, the ALJ again examined the medical record and also

23  heard testimony from plaintiff (who was again represented by counsel), and a

24  vocational expert.  (AR 33-54).

25  On May 18, 2012, the ALJ determined that plaintiff was not disabled

26  through the date last insured (i.e., June 30, 2011).  (AR 18-27).  Specifically, the

27  ALJ found that, through the date last insured:  (1) plaintiff suffered from the

28  following medically determinable impairments:  diabetes with neuropathy,

2

degenerative disc disease in the lumbar and cervical spines, hearing loss, and PTSD (AR 21); (2) plaintiff did not have a severe impairment or combination of impairments (AR 21); and (3) plaintiff's allegations regarding his limitations were not completely credible (AR 26).

The Appeals Council denied plaintiff's application for review of the ALJ's May 18, 2012 decision. (AR 1).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)   Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R.

///

3

Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)   Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)   Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

4

1    To determine whether substantial evidence supports a finding, a court must
2  "'consider the record as a whole, weighing both evidence that supports and
3  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
4  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
5  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
6  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
7  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).
8  **IV.  DISCUSSION**
9    Plaintiff contends, among other things, that a reversal or remand is
10 warranted because the ALJ failed properly to evaluate the opinions of plaintiff's
11 treating physicians and, consequently, erred at step two in not finding any of
12 plaintiff's impairments to be severe.  (Plaintiff's Motion at 21-25, 34-38).  This
13 Court agrees.
14    **A.    Pertinent Law**
15       **1.    Step Two**
16    At step two of the sequential evaluation process, plaintiff has the burden to
17 present evidence of medical signs, symptoms and laboratory findings[2] that
18 establish a medically determinable physical or mental impairment that is severe,
19 and that can be expected to result in death or which has lasted or can be expected
20 to last for a continuous period of at least twelve months.  Ukolov v. Barnhart, 420
21 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3),
22 1382c(a)(3)(D)).  Substantial evidence supports an ALJ's determination that a
23 claimant is not disabled at step two where "there are no medical signs or

24
25  _____
26    [2]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can
    be shown by medically acceptable clinical and laboratory diagnostic techniques[.]"  Ukolov v.
27  Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-4p).
    A "symptom" is "an individual's own perception or description of the impact of his or her
28  physical or mental impairment(s)[.]"  Id. (quoting SSR 96-4p).

1  laboratory findings to substantiate the existence of a medically determinable

2  physical or mental impairment." Id. (quoting SSR 96-4p).

3      Step two is "a de minimis screening device [used] to dispose of groundless

4  claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the

5  normal standard of review to the requirements of step two, a court must determine

6  whether an ALJ had substantial evidence to find that the medical evidence clearly

7  established that the claimant did not have a medically severe impairment or

8  combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)

9  (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)

10  ("Despite the deference usually accorded to the Secretary's application of

11  regulations, numerous appellate courts have imposed a narrow construction upon

12  the severity regulation applied here."). An impairment or combination of

13  impairments can be found "not severe" only if the evidence establishes a slight

14  abnormality that has "no more than a minimal effect on an individual's ability to

15  work." Webb, 433 F.3d at 686 (citation omitted).

16              **2.    Medical Opinion Evidence**

17      In Social Security cases, courts employ a hierarchy of deference to medical

18  opinions depending on the nature of the services provided. Courts distinguish

19  among the opinions of three types of physicians: those who treat the claimant

20  ("treating physicians") and two categories of "nontreating physicians," namely

21  those who examine but do not treat the claimant ("examining physicians") and

22  those who neither examine nor treat the claimant ("nonexamining physicians").

23  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A

24  treating physician's opinion is entitled to more weight than an examining

25  physician's opinion, and an examining physician's opinion is entitled to more

26  ///

27  ///

28  ///

6

weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the

---

[3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1  [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

2  treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

3  602 (9th Cir. 1989).

4      **B.    Analysis**

5      Plaintiff contends that the ALJ failed properly to consider the opinions of

6  Dr. Allen Chiu, one of plaintiff's treating physicians.  The Court agrees.  As the

7  ALJ's error was not harmless, a remand is warranted.

8      In an April 28, 2011 Treating Physician's Statement, Dr. Chiu, among other

9  things, diagnosed plaintiff with multiple physical impairments including chronic

10  degenerative joint disease, and opined that plaintiff's limitations essentially would

11  prevent plaintiff from engaging in work at even a sedentary level ("Dr. Chiu's

12  Opinions").[4]  (AR 472-79).  The ALJ essentially provided three reasons for

13  rejecting Dr. Chiu's Opinions, none of which the Court finds sufficient.

14      First, the ALJ noted ambiguities in Dr. Chiu's report – i.e., the treating

15  physician opined that (a) plaintiff could *carry* 20 pounds "frequently" but could

16

17      _____

18      [4]Specifically, Dr. Chiu (with input from Dr. Rena Kaiser) (i) diagnosed plaintiff with
    chronic degenerative joint disease with limited prognosis for return to hand function, left lower

19  extremity ankle edema, and varicose veins; (ii) noted that plaintiff had limitation in range of
    motion in his upper and lower extremities and back; (iii) noted neurological abnormalities (i.e.,

20  decreased sensation in feet and hands, limitations in reflexes and motor strength), tenderness to
    palpation in the right lumbar spine, and atrophy in the bilateral quadriceps; and opined that

21  plaintiff (iv) could stand/walk less than two hours in an eight-hour workday with normal breaks,
    and less than one hour at a time; (v) could sit less than two hours in an eight-hour workday with

22  normal breaks; (vi) could occasionally walk without an assistive device (but also occasionally
    needed an assistive device to ambulate); (vii) was able to avoid ordinary hazards in the

23  workplace (i.e., boxes on the floor, moving machineries moving part(s) of machineries, and/or
    approaching people); (viii) could carry up to 20 pounds frequently, and could lift up to 20 pounds

24  occasionally; (ix) could occasionally finger, feel, handle, and reach; (x) could never climb kneel,
    crouch, or squat, but could occasionally balance, stoop, or crawl; (xi) could never be exposed to

25  hazards, dusts and moving machinery, but could occasionally be exposed to temperature
    extremes and heights; (xii) was unable to lift heavy/medium objects with his right upper

26  extremity; (xiii) could not sit for prolonged periods of time; and (xiv) had difficulty walking
    moderate distances due to bilateral lower extremity neuropathy.  (AR 472-79).

27

28

1    *lift* 20 pounds only "occasionally"; and (b) plaintiff was able to avoid ordinary

2    hazards in the workplace, including moving machinery, but could never be

3    exposed to hazards or moving machinery.  (AR 23) (citing Exhibit 17F at 4, 78

4    [AR 474, 477-78]).  Such ambiguities do not constitute a specific and legitimate

5    reason for rejecting Dr. Chiu's Opinions.  Cf. Tonapetyan v. Halter, 242 F.3d

6    1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that

7    the record is inadequate to allow for proper evaluation of the evidence, triggers the

8    ALJ's duty to conduct an appropriate inquiry.") (citations and quotation marks

9    omitted).  To the extent the ALJ found Dr. Chiu's Opinions ambiguous or

10   otherwise inadequate, the ALJ should have contacted Dr. Chiu to resolve any

11   perceived conflict, or called a medical expert to assist in determining the extent to

12   which the medical records reflected any limitation on plaintiff's physical ability to

13   work.  See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation

14   omitted) (Although plaintiff bears the burden of proving disability, the ALJ has an

15   affirmative duty to assist the claimant in developing the record "when there is

16   ambiguous evidence or when the record is inadequate to allow for proper

17   evaluation of the evidence.").[5]

18        Second, the ALJ wrote that Dr. Chiu's "extremely restrictive assessment"

19   suggested that plaintiff needed to lie down "for most of the day," but that such

20   significant limitations were "not supported by the [plaintiff's] subjective

21   complaints and [] not consistent with [plaintiff's] daily activities."  (AR 23).  The

22   ALJ's foregoing broad and vague reasons for rejecting Dr. Chiu's Opinions are

23   insufficient.  McAllister, 888 F.2d at 602.  More specifically, the ALJ failed to

24   explain precisely how Dr. Chiu's Opinions were inconsistent with plaintiff's

25   subjective complaints and daily activities.  In fact, the record reflects otherwise.

26   _____

27       [5]Where it is necessary to enable the ALJ to resolve an issue of disability, the duty to
     develop the record may require consulting a medical expert or ordering a consultative

28   examination.  See 20 C.F.R. § 404.1519a.

1   For example, the ALJ wrote that plaintiff testified, in pertinent part, that he could
2   only sit for 20-30 minutes at a time, stand for half an hour to 45 minutes at a time,
3   and walk for ten to fifteen minutes at a time.  (AR 22).  However, such subjective
4   complaints are not inconsistent with Dr. Chiu's Opinions that plaintiff could sit
5   less than two hours in an eight-hour workday with normal breaks, could
6   stand/walk less than two hours in an eight-hour workday and less than one hour at
7   a time, and had difficulty walking moderate distances.  (AR 473-74, 478).

8          Moreover, in the decision, the ALJ noted that plaintiff had "no problems
9   with personal care" and engaged in "a wide variety of activities."  (AR 25-26
10  (citing Exhibits 2E at 10 [AR 212]; 4E at 1-5 [AR 221-25]; 6E at 4 [AR 235]; 8E
11  at 1-5 [AR 246-50]; 9E at 4-8 [AR 257-61]; 12F at 2, 6, 7, 11 [AR 432, 436-37,
12  441]; 13F at 1 [AR 451]; 17F at 8 [AR 478]; 20F at 24, 75, 88 [AR 512, 563,
13  576]); AR 610, 617-19).  While an ALJ may, in certain circumstances, discredit a
14  medical opinion that is inconsistent with plaintiff's daily activities, see Morgan,
15  169 F.3d at 601-02, the record does not support such a finding here.  The cited
16  exhibits reflect that plaintiff's ability to engage in such activities was much more
17  limited than the ALJ's decision suggests.  For example, while plaintiff indicated in
18  his Function Report that he had "no problems with personal care," he also noted
19  that he needed "special reminders" to take his medication, and reminders to
20  shower and shave in order to "look OK."  (AR 223, 258-59).  As for household
21  chores, although, as the ALJ noted, plaintiff would clean the house, he did so only
22  "2-3 times a week" for "[a] few minutes" at a time.  (AR 259).  Plaintiff also could
23  do "some laundry," but did so "slowly."  (AR 248).  When plaintiff did "small
24  repairs," he "usually need[ed] someone to hand him tools and hold a flashlight."
25  (AR 248).  Similarly, while plaintiff gardened, he testified that he did so for only
26  about 20 minutes each day.  (AR 619).  Plaintiff also stated that he needed "a lot"
27  of help and encouragement to do any chores at all.  (AR 223, 259).  Although, as
28  the ALJ also noted, plaintiff would go shopping in stores, he was accompanied by

his wife, went only two to three times a week for one hour at a time, and purchased basic items (*i.e.*, for food and household goods).  (AR 249, 260).  Plaintiff would drive his grandchildren to/from school, but the drive took only ten minutes and plaintiff drove only "if [his] wife [was not] available."  (AR 618).  When plaintiff watched his grandchildren play baseball or soccer, again he only drove for about ten minutes at a time.  (AR 618).  In addition, plaintiff could read the newspaper 2-3 times a day, but would get "frustrated" when he tried to read.  (AR 224, 257, 261).  Plaintiff would attend church only once a week, play golf only every other week, and go to "movies" and "some sporting events" only "once a month."  (AR 225, 250, 261, 441).  Plaintiff's treatment required him to go to the VA clinic only two or three times a week.  (AR 221, 257, 261).

Even assuming plaintiff retained the ability to carry on certain minimal activities of daily living, the record does not reasonably reflect that such activities were inconsistent with Dr. Chiu's Opinions, which permitted plaintiff to sit/stand/walk for a total of four hours each day, lift/carry up to 20 pounds, and only occasionally finger, feel, handle and reach.  (AR 472-79).  Similarly, although notes taken during plaintiff's therapy sessions reflect that in 2010 he took a trip to Disneyland with his grandchildren (AR 432) and went on a cruise/trip to Europe (AR 432, 436-37, 441), and in 2011 traveled with his wife for several weeks (AR 563-64, 576), such infrequent activities were not materially inconsistent with Dr. Chiu's Opinions of disabling symptoms.  Cf. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled.") (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

Third, the ALJ observed later in the opinion that while Dr. Chiu found decreased sensation in plaintiff's hands and feet, and 4/5 strength in all muscle groups of plaintiff's upper and lower extremities, plaintiff "d[id] not report weakness in any of his extremities."  (AR 24) (citing Exhibit 17F at 6 [AR 476]).

11

The ALJ's decision points to no medical evidence, however, which suggests that Dr. Chiu's findings were the result of anything other than objective neurological testing.[6]  The Court cannot conclude that the absence of specific complaints by plaintiff about muscle weakness is necessarily inconsistent with such objective medical testing which reflected that plaintiff had a decrease in sensation and strength.  Cf. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ's "own speculation" does not constitute substantial evidence supporting ALJ's conclusion).

Fourth, even assuming the ALJ provided specific and legitimate reasons for rejecting Dr. Chiu's Opinions, the record lacks substantial evidence to support the ALJ's findings.  Here, the ALJ effectively rejected all other medical source opinions regarding plaintiff's physical limitations.  (AR 23-24)  Therefore, it appears that the ALJ's rejection of Dr. Chiu's Opinions and conclusion that none of plaintiff's medically determinable impairments was severe, were based solely on the ALJ's own lay interpretation of plaintiff's treatment records.  However, "[t]he ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert."  Winters v. Barnhart, 2003 WL 22384784, *6 (N.D. Cal. Oct. 15, 2003); see also Gonzalez Perez v. Secretary of Health & Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not "substitute his own layman's opinion for the findings and opinion of a physician"); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (ALJ may not substitute his interpretation of laboratory reports for that of a physician).

///

---

[6]Moreover, the Administrative Record is missing the second page of Dr. Chiu's Treating Physician's Statement.  Accordingly, the Court cannot confidently conclude, and defendant does not suggest, that the full statement failed to document plaintiff's subjective complaints and/or the objective testing which supported what appear to be clinical findings regarding plaintiff's neurological abnormalities.  (AR 472-73).

1     Finally, Dr. Chiu's Opinions, if credited, support an inference that plaintiff's
2   physical impairments had "more than a minimal effect" on plaintiff's ability to
3   work (*i.e.*, were "severe").  Webb, 433 F.3d at 686 (citation omitted).  Therefore,
4   the ALJ's step two determination that plaintiff had no impairment or combination
5   of impairments that was severe, and that plaintiff was not disabled, was erroneous.
6     The ALJ's errors cannot be deemed harmless since the ALJ found plaintiff
7   not disabled at step two, and did not evaluate plaintiff's impairments at any of the
8   later steps of the sequential evaluation process.  Cf. Lewis v. Astrue, 498 F.3d
9   909, 911 (9th Cir. 2007) (failure to address particular impairment at step two is
10  harmless if ALJ fully evaluates claimant's medical condition in later steps of
11  sequential evaluation process).
12    Accordingly, a remand is appropriate to permit the ALJ properly to consider
13  the medical evidence and evaluate plaintiff's disability at all appropriate steps of
14  the sequential evaluation process.
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**V.    CONCLUSION**[7]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[8]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   May 30, 2014

_____/s/_____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

_____

[7]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[8]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).